[No. 50189–1.   En Banc.   January 10, 1985.]

ROGER CARLSTROM, ET AL, *Appellants,* v. THE
STATE OF WASHINGTON, ET AL, *Respondents.*

*MacDonald, Hoague & Bayless,* by *Robert C. Randolph* and *Andrew H. Salter,* for appellants.

*Kenneth O. Eikenberry, Attorney General, Owen F. Clarke, Jr., Senior Assistant,* and *Laurie F. Connelly, Assistant,* for respondents.

*Judith A. Lonnquist* and *Lynn D. Weir* on behalf of Washington Education Association, amici curiae for appellants.

UTTER, J.—The Yakima Valley College Federation of Teachers appeals a decision by the trial court granting summary judgment in favor of the State. The trial court held that the State did not unconstitutionally impair its contract with the Federation when it breached the contract by failing to implement a salary increase provided for in a collective bargaining agreement. We reverse and hold that the State unconstitutionally impaired its contract with the Federation.

The primary issue presented is whether the State may refuse to honor its contract (Agreement) with the Federation because of a declared fiscal emergency. Appellants claim the State unconstitutionally impaired the Agreement between the parties. The State reasons that it had the leg-

islative authority to modify preexisting contracts pursuant to RCW 28B.52.035, and further contends that because of a fiscal crisis the modification was reasonable and necessary.

In April 1981, the Legislature passed Engrossed Substitute Senate Bill 3636 appropriating money for salary increases for community college faculty of 7.2 percent in 1981–82, and 7 percent in 1982–83. In September, the Office of Financial Management forecast indicated an expected revenue shortfall of approximately $600 million. On September 2, Governor Spellman declared a state of economic emergency, and on September 17 he initiated a 10 percent reduction in allotments to state agencies. He also ordered state departments and agencies to report anticipated program impacts caused by the reductions.

Appellant Roger Carlstrom, representing the Federation, negotiated the Agreement between the Federation and the Board of Trustees of Community College District 16 pursuant to RCW 28B.52. The 2–year agreement, signed October 2, 1981, after the Governor's declaration of emergency, provided for salary increases consistent with, although not contingent upon, ESSB 3636. Article VII, § 7.1 of the contract did, however, provide as part of a broader clause, that the Agreement "is subject to all present and future acts of the legislature."

In April 1982, the Legislature, relying on its police power, passed ESSB 4369, which amended ESSB 3636 to reduce state budget appropriations and to "defer" the appropriation for the 1982–83 salary increases until June 30, 1983. The impact of ESSB 4369 on employees with contracts was far greater than on those without contracts. Noncontractual employees only lost the salary increase from October 1982 through June 30, 1983, while those with contracts *never* received the increase during the life of their contract and since the contract terminated June 10, 1983, they had no assurance they would ever receive the increase.

I

The Federation claims that the legislative "deferral" of the 7 percent increase was in reality a cancellation of the contractual increase which substantially impaired its Agreement with the District. As a result it violated U.S.

Const. art. 1, § 10, cl. 1: "No state shall . . . pass any . . . law impairing the obligation of contracts . . ." and Const. art. 1, § 23: "No . . . law impairing the obligations of contracts shall ever be passed." Neither party has presented this court with argument indicating our state constitution should be construed differently from the federal contract clause. Consequently, in light of the similarity in language, we continue to find cases construing the federal provision persuasive in construing the state clause. *See Ketcham v. King Cy. Med. Serv. Corp.*, 81 Wn.2d 565, 576, 502 P.2d 1197 (1972).

■ Although the federal contract clause appears literally to proscribe any impairment, "the prohibition is not an absolute one and is not to be read with literal exactness . . .". *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 428, 78 L. Ed. 413, 54 S. Ct. 231, 88 A.L.R. 1481 (1934). This means that if the State impairs contracts between private parties, a court, deferring to legislative judgment, determines if the enactment was "reasonably necessary." *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 74 L. Ed. 2d 569, 103 S. Ct. 697 (1983); *Ketcham v. King Cy. Med. Serv. Corp., supra.* However, when the State impairs its own contracts, the reviewing court must apply an independent analysis to determine if the impairment was "reasonable and necessary". *United States Trust Co. v. New Jersey*, 431 U.S. 1, 52 L. Ed. 2d 92, 97 S. Ct. 1505 (1977); *Energy Reserves*, 459 U.S. at 412 n.14.

■ The State first contends that no impairment occurred because article VII, section 7.1 subjected the Agreement to future legislative enactments. There is no doubt from the facts in this case that the State was fully aware how to make its contracts contingent on future acts of the Legislature. The State's negotiator had recently negotiated a similar contract between the Shoreline Community College faculty and the Shoreline Community College District. The Shoreline contract, which served as a model for the Agreement, made the salary schedule contingent on the availability of legislative appropriation. No such language appeared in this Agreement. In addition, the State's reliance on *National Bldg. v. State Bd. of Educ.*, 85 N.M. 186, 510 P.2d 510 (1973) and *Manhattan Bldgs., Inc.*

*v. Hurley,* 231 Kan. 20, 643 P.2d 87 (1982), is mistaken. In each case, the contract at issue provided explicitly that it was contingent on the Legislature's enactment or failure to enact specific statutes.

The unique Yakima contract language, the circumstances surrounding its execution, and the lack of any evidence in the record supporting the State's contentions lead us to conclude as a matter of law that the parties did not intend to make the salary increases contingent on the availability of legislative appropriations. Failure to implement a contractual increase altered and diminished a valid and binding contract. *Metropolitan Seattle v. O'Brien,* 86 Wn.2d 339, 352, 544 P.2d 729 (1976). That repudiation impaired the contract.

The State argues that although it may have impaired the Agreement, the impairment was insubstantial. However, in a case very similar on its facts, the Supreme Court of California stated:

An increase in wages is frequently the very heart of an employment contract . . . since employees may surrender various employment benefits in exchange for a wage increase. . . . Thus . . . it cannot be said that "[t]he measure taken . . . was a mild one . . . hardly burdensome" to petitioners.

(Citations omitted.) *Sonoma Cy. Org. of Pub. Employees v. County of Sonoma,* 23 Cal. 3d 296, 308–09, 591 P.2d 1, 152 Cal. Rptr. 903 (1979). In addition to the loss in wages during the 1982–83 academic year, those faculty members who remain in the community college system may have lost that 7 percent of their salaries, along with accumulated interest, for the rest of their lives. Because the contract expired before the end of the statutory deferral of salary increases, the teachers had no assurance they would ever receive the increase promised in the 1981–83 agreement. Measured at the time of the breach, and within the life of the contract, the impairment was substantial. The impact is long term and significant. "Since the statute accomplishes a severe impairment of . . . contractual rights, the 'height of the hurdle . . .' is elevated and 'a careful examination of . . . [the statute's] nature and purpose' is required." *Sonoma County,* 23 Cal. 3d at 309.

## II

Both appellant and respondent agree that to withstand a constitutional challenge, a state's impairment of its own contract must be both reasonable and necessary. Hence, the trial court should have applied its independent judgment to determine if ESSB 4369 could withstand such scrutiny.

The court's independent determination of reasonableness and of necessity requires consideration of whether the legislative purpose could have been achieved by means that either did not impair or less drastically impaired the contract. Yet the trial court, citing *State v. Laitinen,* 77 Wn.2d 130, 459 P.2d 789 (1969), *cert. denied,* 397 U.S. 1055 (1970), applied a reasonably necessary standard and deferred to the Legislature's judgments not only that an emergency existed, but also that the Legislature's acts were reasonably related to the existence of that emergency. Reliance on the reasonably necessary standard with its resultant deference to legislative judgment is reversible error.

An economic emergency may properly be considered, but it is just another factor "subsumed in the overall determination of reasonableness." *United States Trust,* 431 U.S. at 22 n.19. Financial necessity, though superficially compelling, has never been sufficient of itself to permit states to abrogate contracts. "[A] State is not completely free to consider impairing the obligations of its own contracts on a par with other policy alternatives." *United States Trust,* 431 U.S. at 30–31. If governments could reduce their financial obligations whenever an important public purpose could be conceived for repudiating a contract "the Contract Clause would provide no protection at all." *United States Trust,* 431 U.S. at 26. The Ninth Circuit has observed that, although limitation of public spending is a legitimate state goal, "its weight is diminished in contract clause analysis when the state limits its own previous financial commitments." *Continental Ill. Nat'l Bank & Trust Co. v. Washington,* 696 F.2d 692, 701 (9th Cir. 1983).

The State, relying on *Subway–Surface Supervisors Ass'n v. New York City Transit Auth.,* 44 N.Y.2d 101, 375 N.E.2d 384, 404 N.Y.S.2d 323 (1978), argues that an exercise of police power is entitled to deference. However, the mere assertion of the police power as the basis for enacting legis-

lation is not sufficient to shield it from scrutiny when constitutional considerations are at stake. In *Transit Auth.*, the court upheld an impairment in reliance on the legislative declaration that the health and safety of its citizens was endangered. *Transit Auth.*, 44 N.Y.2d at 110 n.3. The Ninth Circuit rejected an initiative based on the police power by explaining that there was no attempt to justify the police power exercise on the basis of health and safety. *Continental Ill. Nat'l Bank & Trust Co. v. Washington*, 696 F.2d at 701. Since the State only relied on financial considerations to justify ESSB 4369, its assertion of the police power does not save the measure.

The United States Supreme Court has observed that if the state is aware of problems when it enters into a contract, the state cannot impair those contracts on the basis of problems that have only changed in degree rather than in kind. *United States Trust*, 431 U.S. at 31–32. Consequently, the reasonableness of ESSB 4369 depends on the fact that the economic emergency the State relied on was unexpected and unforeseeable. *United States Trust*, 431 U.S. at 30–32. The record reflects that both the State Board for Community College Education and the State were aware by late July 1981 of a probable shortfall in state revenues. The record further reflects that the State had ample opportunity to make the Agreement contingent on availability of legislative appropriations, as it had done in the Shoreline contract. Yet it chose not to do so.

Since the State was fully aware of its financial problems while negotiating and prior to signing the Agreement, it cannot now be permitted to avoid the Agreement based on those same economic circumstances. Although the financial situation worsened, it was a change in degree, not in kind. We therefore find as a matter of law that because the State's acts were not reasonable in view of the circumstances existing when it entered into the contract, and because the "deferral" was in reality a cancellation of the salary increases for contractual employees while it was a true deferral for noncontract employees, the impairment was unconstitutional. Finding the State's acts unreasonable, we need not reach the question of necessity.

## III

■ The State urges the court to construe RCW 28B.52-.035 as a reservation of its right to modify preexisting contracts with community college faculty. We decline. The Legislature knows how to use plain English to make existing contracts subject to future modification. It could have written RCW 28B.52.035 expressly to provide: These agreements shall be subject to subsequent modification by the Legislature. Instead it chose to write: "These agreements will not be binding upon future actions of the legislature."

The Ninth Circuit found a reservation of legislative power to modify bond contracts, RCW 43.52.3411, to permit only modification of future contracts between WPPSS and bondholders. *Continental Ill. Nat'l Bank & Trust Co. v. Washington,* 696 F.2d 692, 699 (9th Cir. 1983). The court, however, refused to read the reservation lightly insofar as "purely financial aspects of the agreement are concerned" because the State was not acting in its purely sovereign capacity when it borrowed money. 696 F.2d at 699.

> While the State unquestionably may reserve power to change some aspects of existing contracts, the State has not specifically done so here. Moreover, to interpret Section 3411 as a broad reservation of power is not permissible when the statute is viewed in light of the contract clause. . . . Section 3411 therefore cannot be applied as broadly and retrospectively as its literal language may suggest.

(Citation omitted.) *Continental Ill. Nat'l Bank & Trust Co. v. Washington,* 696 F.2d 692, 699 (9th Cir. 1983).

*Washington Educ. Ass'n v. State,* 97 Wn.2d 899, 652 P.2d 1347 (1982) (hereinafter *WEA*) and *American Hosp. Ass'n v. Schweiker,* 529 F. Supp. 1283 (N.D. Ill. 1982), both cited by the State, permitted legislative modification of preexisting contracts. *WEA* was a challenge to a measure enacted pursuant to RCW 28B.52.035. We did not interpret RCW 28B.52.035 since we found that the measure did not substantially modify contractual rights. *Schweiker* upheld legislative change of a preexisting contract on similar grounds. Here, in contrast, the loss of a 7 percent salary increase was a substantial modification. Reliance on *WEA*

or *Schweiker* is inapposite. RCW 28B.52.035 does not give the State the power to modify preexisting contracts when those enactments substantially impair contracts and violate the contract clauses of the United States and Washington constitutions.

In SHB 782, the statute at issue in *WEA,* the Legislature explicitly relied on its perceived authority under RCW 28B.52.035 and purposefully modified collective bargaining agreements. ESSB 4369 did not rely on RCW 28B.52.035 nor did it contain a recognition that it would abrogate state contracts. The record also reflects that the Legislature was unaware that ESSB 4369 would impair existing contracts. To find that the Legislature intended to abrogate contracts and that it did so based on its understanding of its authority pursuant to RCW 28B.52.035 would read far more into ESSB 4369 than the language of the bill warrants. Nevertheless, had the Legislature intended to impair contracts and had it acted on its presumed authority, the action would still be subject to the reasonable and necessary test previously discussed.

## IV

Finally, appellants and amicus claim violations of the Federation's due process rights and of Const. art. 2, §§ 19 and 37.

■ Where there is a deprivation of a significant property interest, due process requires a predeprivation hearing. *Olympic Forest Prods., Inc. v. Chaussee Corp.,* 82 Wn.2d 418, 511 P.2d 1002 (1973). There is little doubt that a contracted for salary increase is a property interest, *United States Trust Co. v. New Jersey,* 431 U.S. 1, 19 n.16, 52 L. Ed. 2d 92, 97 S. Ct. 1505 (1977), protected by the Fourteenth Amendment. *Mackey v. Graham,* 99 Wn.2d 572, 575, 663 P.2d 490, *cert. denied,* 464 U.S. 894 (1983).

We have held, however, that when a decision regarding deprivation of property interests is made at nonadjudicatory levels, the Fourteenth Amendment does not require faculty participation. *WEA,* at 909. Here, as in *WEA,* the decision to modify the contract was made at the gubernatorial and legislative levels. Furthermore, actual implementation by the District did not require individualized

adjudication. Consequently, a predeprivation hearing was not required. Although the trial court erred when it applied an arbitrary and capricious substantive due process test to decide that the District did not violate the Federation's procedural due process rights, the error was harmless since we find no due process violation.

Amicus claims that ESSB 4369 violates Const. art. 2, §§ 37 and 19. Because we have found the provision unconstitutional as it relates to the Federation, we need not address those issues.

The trial court is reversed inasmuch as ESSB 4369 is an unconstitutional violation of the state and federal contract clauses. We remand to the trial court to apply the proper remedy consistent with this decision.

WILLIAMS, C.J., and BRACHTENBACH, DOLLIVER, PEARSON, and ANDERSEN, JJ., concur.

DORE and DIMMICK, JJ., concur in the result.

After modification, further reconsideration denied March 15, 1985.[1]

---

[1] In the Motion for Reconsideration the State alleges facts unknown to the court at the time of hearing and not contained in the record. We are still unable to determine whether the teachers have now received the promised raises in full. It does appear that in no event are they in the same position in all respects they would have been had the contract been honored.