Dr. Ivory V. Nelson, President Central Washington University Barge 314 400 East 8th Avenue Ellensburg, WA 98926-7500
Dear Dr. Nelson:
By letter previously acknowledged, you have requested an opinion on several questions we have renumbered and paraphrased as follows:
 May the Central Washington University (CWU) Board of Trustees authorize the university president to grant individual salary increases to members of the faculty, exempt staff, or classified staff in amounts greater than the 3.0 percent increase provided by the Legislature in the 1997-99 biennial budget?
 If the university has conducted a faculty and exempt staff salary study and the university has found salary disparity based on gender, age, and/or ethnicity, may the Board of Trustees authorize the president to use any source of funds to increase individual salaries by amounts greater than the 3.0 percent increase provided in the biennial budget, for the purpose of correcting the disparity?
 If the university, through a systematically-defined faculty and exempt staff salary study, finds salary disparity resulting from salary compression, may the Board of Trustees authorize the president to use any source of funds to increase individual salaries by amounts greater than the 3.0 percent increase provided in the biennial budget, for the purpose of correcting the disparity?
 If the university has a contract or bargaining agreement providing for incremental salary increases each year, and if this increase would be greater than what the Legislature has appropriated for a given year, may the university use local funds or other fund sources to provide for the difference between the appropriated amount and the increases called for in the contract?
 If the university has not fully expended its salary funds in a previous year, may the university use some or all of the dollars remaining from the previous year to address salary inequities in the present year?
 In a year in which the Legislature fails to appropriate funds for salary increases, may the university use any source of funds to increase individual salaries for the purpose of correcting disparities, or for other reasons?
 BRIEF ANSWERS
In any given year, the authority of CWU to grant salary increases depends on the language of the current appropriations law. In the 1997-99 biennium, the Legislature has limited the university's use of general fund appropriations to an average 3.0 percent salaryincrease. This language does not preclude the university from granting individual increases which are greater or smaller than 3.0 percent, so long as the increases granted average out at 3.0 percent and do not result in an over-expenditure of the appropriation. The current budget does not prevent the university from using certain other appropriated funds, or non-appropriated local funds, for additional salary increases for the purpose of correcting disparities or for other lawful purposes. These observations relate to the faculty and exempt staff of the university, as the salaries of classified employees are determined by the Personnel Resources Board. The authority of the university to grant salary increases in any future year would depend on the state of the law at the time, including the language of the operating budget for the year in question.
 ANALYSIS
Central Washington University (CWU) is designated a regional university in RCW 28B.35.010. It is governed by an eight-member board of trustees appointed pursuant to RCW 28B.35.100. A state-owned university or college possesses only that authority which the Legislature has explicitly granted to it, or those powers necessarily implied by the express authority granted. See, Green River Comm'ty College v. Higher Educ. Personnel Bd., No. 10,95 Wn.2d 108, 622 P.2d 826 (1980). The CWU board of trustees is expressly granted the power to ". . . employ the president of the regional university, his assistants, members of the faculty, and other employees of the institution, who, except as otherwise provided by law, shall hold their positions, until discharged therefrom by the board for good and lawful reason." RCW28B.35.120(2). Although the point has apparently never been explicitly considered by the courts before, we would read this authority as including the power to set the compensation of university officers and employees, except where the Legislature has specifically provided otherwise.[1]
The Legislature has "provided otherwise" as to certain aspects of a university's authority to fix the compensation of its employees. As discussed more fully below, the authority to fix the salaries of classified employees of higher education institutions has been vested in the Personnel Resources Board rather than in each university's board of trustees. RCW 41.06.150-.165. Furthermore, the Legislature, which provides most of the funding for university operations through its biennial state operating budget, has chosen to limit the use of state appropriated funds for salary increases through language in the biennial budgets.[2]
The Budget and Accounting Act strictly requires all state agencies and institutions to spend appropriated funds in accordance with the terms and conditions imposed by the Legislature:
 No state officer or employee shall intentionally or negligently: Over-expend or over-encumber any appropriation made by law; fail to properly account for any expenditures by fund, program, or fiscal period; or expend funds contrary to the terms, limits, or conditions of any appropriation made by law.
RCW 43.88.290. The same act provides for civil penalties, reimbursement for damages, and forfeiture of office by an officer violating the act. RCW 43.88.300.
With this background, we turn to the current biennial budget act language bearing upon salary increases. Laws of 1997, ch. 454, § 601, provides:
 The appropriations in sections 603 through 609 of this act are subject to the following conditions and limitations:
 (1) "Institutions" means the institutions of higher education receiving appropriations under sections 603 through 609 of this act.
 (2)(a) The salary increases provided or referenced in this subsection shall be the allowable salary increases provided at institutions of higher education, excluding increases associated with normally occurring promotions and increases related to faculty and professional staff retention, and excluding increases associated with employees under the jurisdiction of chapter 41.56
RCW pursuant to the provisions of RCW 28B.16.015.
 (b) Each institution of higher education shall provide to each classified staff employee as defined by the office of financial management a salary increase of 3.0 percent on July 1, 1997. Each institution of higher education shall provide to instructional and research faculty, exempt professional staff, academic administrators, academic librarians, counselors, teaching and research assistants as classified by the office of financial management, and all other nonclassified staff, including those employees under RCW 28B.16.015, an average salary increase of 3.0 percent on July 1, 1997. For employees under the jurisdiction of chapter 41.56 RCW pursuant to the provisions of RCW 28B.16.015, distribution of the salary increases will be in accordance with the applicable collective bargaining agreement. However, an increase shall not be provided to any classified employee whose salary is above the approved salary range maximum for the class to which the employee's position is allocated. To collect consistent data for use by the legislature, the office of financial management, and other state agencies for policy and planning purposes, institutions of higher education, shall report personnel data to be used in the department of personnel's human resource data warehouse in compliance with uniform reporting procedures established by the department of personnel.
 (c) Each institution of higher education receiving appropriations under sections 604 through 609 of this act may provide to instructional and research faculty, exempt professional staff, academic administrators, academic librarians, counselors, teaching and research assistants, as classified by the office of financial management, and all other nonclassified staff, but not including employees under RCW 28B.16.015, an additional average salary increase of 1.0 percent on July 1, 1997, and an average salary increase of 2.0 percent on July 1, 1998. Any salary increases authorized under this subsection (2)(c) shall not be included in an institution's salary base. It is the intent of the legislature that general fund-state support for an institution shall not increase during the current or any future biennium as a result of any salary increases authorized under this subsection (2)(c).
 (d) Specific salary increases authorized in sections 603 through 609 of this act are in addition to any salary increase provided in this subsection.
Id. (Italics added.)
Laws of 1997, ch. 454, § 607 contains the biennial operating appropriations for Central Washington University. Therefore, CWU is clearly subject to the language in § 601 of the budget, quoted just above.
There are several points to note about the language chosen by the Legislature in the 1997-99 operating budget. First, the budget language contains examples of both "shall" and "may." For example, in § 601(2)(b), the salary increases set forth "shall" be provided, but those mentioned in subsection (2)(c) "may" be provided. Our court has found that the use of "shall" and "may" in the same statute ". . . indicates that the Legislature intended the two words to have different meanings: "may" being directory while "shall" being mandatory. State v. Krall, 125 Wn.2d 146,881 P.2d 1040 (1994), citing State v. Bartholomew, 104 Wn.2d 844, 848,710 P.2d 196 (1985).
Second, the Legislature, in the current budget, has distinguished between fixed salary increases and "average" increases. Thus, in subsection (2)(b) of § 601, the institutions of higher education "shall provide" an increase to each classified staff employee an increase of 3.0 percent. By contrast, the institutions shall provide all other employees with ". . . average salary increases of 3.0 percent. . . ." As with "shall" and "may," we will interpret the distinctions between these phrases as intentional, and significant.
With this background in mind, we turn to your specific questions:
 May the Central Washington University (CWU) Board of Trustees authorize the university president to grant individual salary increases to members of the faculty, exempt staff, or classified staff in amounts greater than the 3.0 percent increase provided by the Legislature in the 1997-99 biennial budget?
To answer this question, we will examine the provisions in § 601 in the budget act, noting especially the use of "shall" and "may" and the nature of the salary increases authorized by the Legislature. The first information useful to your answer is found in subsection (2)(a), which provides that the allowable salary increases exclude: increases associated with normally occurring promotions[3], increases related to faculty and professional staff retention, and increases associated with employees under the jurisdiction of chapter 41.56 RCW pursuant to the provisions of RCW 28B.16.015. An institution need not "count" these three types of increases in calculating the amount the Legislature has authorized for increases elsewhere in the budget.
Next, subsection (2)(b) mandates, for classified employees, an increase of 3.0 percent on July 1, 1997. The use of "shall" indicates that this increase is mandatory, not discretionary with the institution. The use of "3.0 percent," without any modifier, indicates that each classified employee is to receive exactly 3.0 percent. Thus, as to this category of employees, the institution has no discretion either to withhold the increase or to change its amount.[4]
The next part of subsection (2)(b) provides that each institution "shall provide" an increase to faculty, exempt professional staff, administrators, and other nonclassified staff, ". . . an averagesalary increase of 3.0 percent. . . ." Here, the use of "shall" indicates that the institution must grant salary increases to these categories of employees.[5] However, the use of the phrase "an average salary increase" indicates that the institution is not
required to give an "across the board" 3.0 percent increase. Although an institution could comply with the statute by granting such an "across the board" increase, it could also set individual increases which are higher or lower than 3.0 percent, as long as 3.0 percent is the "average."
Subsection (2)(c) provides additional increases, with some strings. Under this subsection, each higher education institution "may provide" nonclassified staff (except those covered by RCW 28B.16.015) with ". . . an additional average salary increase of 1.0 percent on July 1, 1997, and an average salary increase of 2.0 percent on July 1, 1998." Here the language ("may") is clearly discretionary, not mandatory. Thus, CWU could choose not to provide any additional increases under this subsection. And here, again, the increases authorized are "average," so that an institution may grant any individual employee either more or less than the "average," so long as the total granted does not exceed the "average" authorized.[6]
Finally, subsection (2)(d) provides that the increases in § 601 of the budget shall be "in addition" to specific salary increases authorized in sections 603 through 609. CWU did receive appropriations which might meet this description. Section 607(3) provides the university with $70,000 in each fiscal year ". . . solely to recruit and retain minority students and faculty." Section 607(4) provides $51,000 in each fiscal year ". . . solely for competitively offered faculty recruitment and retention salary adjustments." Some portion of these small appropriations might be used to recruit or retain faculty through salary increases.
To summarize our answer to your first question, the 1997-99 operating budget would not permit CWU to decide the salary increases of classified employees; these are determined by the law itself. As to other categories of employee, some individual increases could exceed 3.0 percent, so long as the "averages" and other limitations established in the budget are met. Finally, the limitations are on increases granted from state appropriated funds. By contrast, the 1975 Legislature prohibited additional salary increases "from any fund source." See, Laws of 1975-76, 2nd Ex. Sess., ch. 133, § 6(3).
 If the university has conducted a faculty and exempt staff salary study and the university has found salary disparity based on gender, age, and/or ethnicity, may the Board of Trustees authorize the president to use any source of funds to increase individual salaries by amounts greater than the 3.0 percent increase provided in the biennial budget, for the purpose of correcting the disparity?
 If the university, through a systematically-defined faculty and exempt staff salary study, finds salary disparity resulting from salary compression[7], may the Board of Trustees authorize the president to use any source of funds to increase individual salaries by amounts greater than the 3.0 percent increase provided in the biennial budget, for the purpose of correcting the disparity?
We would answer these two questions in the affirmative. As we noted in our answer to Question 1, the 1997-99 budget, as to both faculty and exempt staff, authorizes an "average" salary increase of 3.0 percent. The university could vary the actual amount granted to individual employees, using its discretion over individual increases to implement the results of disparity studies, so long as the university stays within the mandated "average."[8]
 If the university has a contract or bargaining agreement providing for incremental salary increases each year, and if this increase would be greater than what the Legislature has appropriated for a given year, may the university use local funds or other fund sources to provide for the difference between the appropriated amount and the increases called for in the contract?
We note, first of all, that this question does not apply to classified university employees, since the salaries of this group are set by the Personnel Resource Board.
Based on the reasoning of our answer to your first question, if the university has a contractual obligation to increase certain salaries each year, it will have to meet that obligation. A separate question arises, though, whether the university may use state-appropriated funds to meet the obligation. If not, the university may have to use non-appropriated funds for that purpose. The answer depends on the nature of the obligation and on the specific budget language covering the situation.
The 1997-99 operating budget recognizes some contractual obligations. Laws of 1997, ch. 454, § 601(2)(b) identifies one group of employees with a contract as ". . . employees under RCW 28B.16.015. . . ." RCW 28B.16.015 permits an institution and the exclusive bargaining representative of a bargaining unit of employees classified under the personnel system to have their ". . . relationship and corresponding obligations governed entirely by the provisions of chapter 41.56 RCW. . . ."[9] The current budget provides that ". . . [f]or employees under the jurisdiction of chapter 41.56 RCW pursuant to the provisions of RCW 28B.16.015, distribution of the salary increases will be in accordance with the applicable collective bargaining agreement. . . ."[10] Laws of 1994, ch. 454, § 601(2)(b).
As to other groups, the 1997-99 budget makes it clear that the use of state-appropriated funds is limited to the percentage increases discussed above. While the university may use appropriated funds to meet its contract obligations so long as it stays within the limits established in the budget, the university would have to find other, non-appropriated funds to meet any "gap" between the legislatively authorized expenditures and the contract obligations in question.
All of our discussion assumes the existence of an enforceable contract obligation by the university to some group of employees. We will not attempt here to outline which contracts or collective bargaining agreements are enforceable. In Carlstrom v. State,103 Wn.2d 391, 694 P.2d 1 (1985), the State Supreme Court found that a community college had lawfully bargained for a salary increase which the Legislature could not constitutionally impair (by reducing the amount appropriated and deferring the implementation of part of the increase). Since the Court was dealing with budget language actually purporting to change the increase negotiated in the contract, the Court did not deal with the more limited language employed by most recent legislatures: restricting the use of appropriated funds rather than restricting the amounts paid to meet contract obligations. We have suggested that, at least so long as an institution has local funds available to meet the "gap" between legislative appropriation and contract obligation, the courts are unlikely to mandate an increased legislative appropriation. AGO 1987 No. 6 at pp. 11-12 (fn. 6). See also AGO 1994 No. 16, in which we found that faculty at four-year state-supported higher education institutions did not have a right to engage in collective bargaining, but that an institution could voluntarily bargain with a group of employees under some circumstances, as more fully discussed in our earlier opinion.
To summarize, the current budget allows CWU some flexibility in using appropriated funds to meet contract or collective bargaining obligations, but the university would have to find non-appropriated funds to meet any contract obligation beyond the limits the Legislature has set on the use of appropriated funds. This answer could well change in future budget cycles, as the Legislature often varies the terms on which it appropriates funds for salary increases.
 If the university has not fully expended its salary funds in a previous year, may the university use some or all of the dollars remaining from the previous year to address salary inequities in the present year?
If you are referring to funds appropriated by a previous legislature, the answer is no, because all appropriations ". . . shall lapse at the end of the fiscal period for which the appropriations are made to the extent that they have not been expended or lawfully obligated." RCW 43.88.140. Occasionally the Legislature may be persuaded to reappropriate certain funds which were not expended in the previous budget period, but such an act is a necessary prerequisite to their further use by an agency or institution.
By contrast, as discussed above, if the university has a pool of non-appropriated funds available to supplement the money appropriated by the Legislature, the current budget would not preclude the use of this "pool" for additional salary increases, so long as doing so would not increase the institution's salary base or increase the Legislature's obligation to appropriate funds during the current biennium or in future years.
 In a year in which the Legislature fails to appropriate funds for salary increases, may the university use any source of funds to increase individual salaries for the purpose of correcting disparities, or for other reasons?
The answer to this question depends on the language of the budget in effect at the time the situation occurs. As discussed above, the 1997 Legislature chose to limit the use of state-appropriated dollars to fund salary increases, but did not prohibit institutions from granting greater increases with non-appropriated dollars. Some past legislatures, however, have prohibited the use of "any funds" for salary increases. To the extent appropriated funds are not available to fund a salary increase, the university will want to assure itself that the funds used are lawfully available for that purpose, and that their use will not put the institution in violation of some other budget limitation or other statutory restraint.
We trust the foregoing will be of assistance.
Very truly yours,
CHRISTINE O. GREGOIRE Attorney General
JAMES K. PHARRIS Sr. Assistant Attorney General (360) 664-3027
Enclosure: AGLO 1976 No. 39
[1] Unlike the trustees of community and technical colleges, the trustees of the four-year higher education institutions do not have express authority to fix the compensation of their employees. Cf. RCW 28B.50.140. However, this power may be implied from the authority of the universities to employ and from the authority of the trustees to have ". . . full control of the regional university and its property of various kinds, except as otherwise provided by law. . . ." RCW 28B.35.120(1).
[2] In AGO 1987 No. 6 we concluded that the legislature may not, without amending permanent law, eliminate or limit the authority of community college districts to grant salary increases to district employees. However, we expressed the opinion that the legislature could use conditions in the biennial appropriation act to limit the use of the funds appropriated in that act. The same analysis would apply to an appropriation for a regional university.
[3] At this point we should make some observations about promotions. As we indicate in the main text, an average salary increase of 3.0 percent does not mean a 3.0 percent increase for each employee. Rather it means that the salary increases in total shall not exceed 3.0 percent of the total base salaries of all employees covered by the appropriation. Thus, if an employee is promoted to an existing position which has been vacated by another incumbent, there will, in most situations, be no impact on the "3.0 percent" provision because the promoted employee has succeeded to his/her predecessor's salary and there is, thus, no increase in the total payroll. To interpret the "average of 3.0 percent" language, it is better to look at the salary associated with a position rather than the salary paid to any individual employee. We discussed this issue at some length in AGLO 1976 No. 39 (copy attached).
As we noted in AGLO 1976 No. 39, there are two situations in which promotions may present problems under the appropriation. The first is when the person being promoted assumes the new position at a higher rate than the predecessor was paid. Since the promotion to an existing position clearly involves a position covered by the appropriation language, any increase granted above the level existing for the position at the time of the increase would be an increase within the meaning of the budget act. However, such an increase would be within the allowable "exceptions" in the budget and could, therefore, be paid out of "local funds.
The second situation is when the promotion is made to a newly created position. As we concluded in AGLO 1976 No. 39, the salary initially established for the position and paid to its first incumbent does not constitute an "increase" within the meaning of the act. For these positions, it makes no difference if the position is filled by the promotion of a current employee or through the hiring of a new employee. Either way, the initial salary paid should logically be excluded from the base in calculating the amount of "increase" paid by the university to its employees.
We emphasize, of course, that this analysis applies only if the new position is bona fide and promotion to it involves an increase in duties and responsibilities as well as a new salary. Otherwise, a "promotion" could simply be a subterfuge to evade the legislative limitation on salary increases.
[4] As noted earlier, the salary schedules for classified university employees are adopted by the Personnel Resources Board under RCW 41.06.150 through .165. Presumably the Personnel Resources Board has acted to implement the 3.0 percent increase by revising its schedule. The appropriation is provided to CWU and other institutions because they pay the employees, though they do not determine their compensation.
[5] We do not understand the legislature to be mandating any specific minimum salary increase for any single employee. The mandatory language relates to the employees as a class, not as individuals.
[6] We will not repeat the conditions imposed by the Legislature on these increases, but they are clearly set forth in the text of the subsection.
[7] We understand the term "salary compression" to refer to the situation arising when a new faculty member or administrator is hired at an initial salary greater than current employees with comparable experience, duties and responsibilities. For instance, A may have been hired in 1988, and now has ten years of experience in a certain position at the university. Because the legislature has consistently limited salary increases, A's salary, even if A received the maximum permitted in each budget cycle, has increased only modestly during A's ten year tenure. If B is hired today into a job comparable to A's position, market conditions may require the university to pay B considerably more than A is earning. If A and B have substantially equivalent qualifications and responsibilities, this situation produces a disparity between the salaries of A and B.
[8] It is well to remember at this point that § 601(2)(a) of the 1997-1999 budget act excludes "increases related to faculty and professional staff retention" from the base for purposes of calculating the allowable maximum salary increases. We will not hear attempt to define "faculty and professional staff retention"; this issue is beyond the scope of your question.
[9] Chapter 41.56 RCW contains the statutes relating to collective bargaining for public employees.
[10] However, the next sentence notes that ". . . an increase shall not be provided to any classified employee whose salary is above the approved salary range maximum for the class to which the employee's position is allocated."