Honorable Matthew M. Smith State Actuary P.O. Box 40914 Olympia, WA 98504-0914
Dear Mr. Smith:
By letter previously acknowledged, you have requested our opinion on the following question:
Do the provisions in RCW 41.31.030, RCW 41.31A.020(4), RCW41.31A.030(5), and RCW 41.31A.040(5), containing "non-contractualrights clauses", negate any contractual obligation of the state toprovide gain-sharing benefits in the future?
 BRIEF ANSWER
For the reasons set forth below, we conclude that the answer to your question is yes, in that the Legislature retains the authority to amend or repeal the gain-sharing provisions of the public employee pension statutes in the future and, if it does so, no contractual claim can be made for gain-sharing distributions due after that date. While the Washington Supreme Court has held that the pension statutes do create certain rights for public employees that are contractual in nature, the Court has also held that those rights consist of a pension substantially in accord with the statutes as they exist when the employee begins service.
Here, the statutes in question have always clearly and unequivocally provided that the gain-sharing provisions do not create a contractual right in any public employee member or beneficiary to receive gain-sharing distributions in the future, and that the Legislature may amend or repeal these particular statutes at any time.
 ANALYSIS
Your question concerns the "gain-sharing" provisions of the public employee pension statutes that the Legislature enacted in 1998 and amended in 2000 and 2003. RCW 41.31 and 41.31A provide for an additional payment to be made to members and beneficiaries of certain pension plans when there have been four consecutive years of "extraordinary gains". When gain-sharing occurs, half of the extraordinary gains are distributed to eligible members or beneficiaries.[1] RCW 41.31.020; RCW 41.31A.020(3), .030(3), .040(3). RCW 41.31 governs gain-sharing for persons covered by Public Employees' Retirement System (PERS) Plan 1 and Teachers' Retirement System (TRS) Plan 1. RCW 41.31A governs gain-sharing for persons covered by PERS Plan 3, TRS Plan 3, and School Employees' Retirement System (SERS) Plan 3.
However, in the 1998 act, as well as the 2000 and 2003 amendments, the Legislature enacted reservation of rights clauses that specifically limited the gain-sharing rights of current and future members and beneficiaries. The Plan 1 clause states:
The legislature reserves the right to amend or repeal this chapter in the future and no member or beneficiary has a contractual right to receive this postretirement adjustment not granted prior to that amendment or repeal.
RCW 41.31.030. The Plan 3 clauses are worded substantially the same. They read:
The legislature reserves the right to amend or repeal this section in the future and no member or beneficiary has a contractual right to receive this distribution not granted prior to that time.
RCW 41.31A.020(4), .030(5), .040(5).
Your question concerns the effect of the above provisions, in light of the law governing public pensions in this state. We turn first to the seminal Washington case on this subject, Bakenhus v. City of Seattle, 48 Wn.2d 695, 701,296 P.2d 536 (1956). There, the Court stated:
[T]he employee who accepts a job to which a pension plan is applicable contracts for a substantial pension and is entitled to receive the same when he has fulfilled the prescribed conditions. His pension rights may be modified prior to retirement, but only for the purpose of keeping the pension system flexible and maintaining its integrity.
The Court has since clarified that "at least some pension rights are contractual in nature". Retired Pub. Employees Coun. v. Charles,148 Wn.2d 602, 624, 62 P.3d 470 (2003). While the pension statutes are not in themselves contracts, they provide the right to receive certain benefits that constitute deferred compensation to the employee for services rendered. Noah v. State, 112 Wn.2d 841, 844, 774 P.2d 516 (1989). If it were otherwise, these benefits would amount to mere gratuities that are prohibited by the state constitution.Bakenhus, 48 Wn.2d at 698. Accordingly, the following have been held to be vested rights that are protected from subsequent impairment: size of a pension (Bakenhus); right to the statutory retirement age at the time of employment (Eagan v. Spellman,90 Wn.2d 248, 258, 581 P.2d 1038 (1978)); right to a practice of including certain lump sum payments in the calculation of retirement benefits (Washington Ass'n of Cy. Officials v.Washington Pub. Employees' Ret. Sys. Bd., 89 Wn.2d 729, 733,575 P.2d 230 (1978)); right to add to a pension by using accrued vacation pay (Washington Fed'n of State Employees v. State,98 Wn.2d 677, 679, 658 P.2d 634 (1983)); and right to the systematic funding of the retirement system to maintain actuarial soundness (Charles, 148 Wn.2d at 625).
Nevertheless, the question remains: Assuming that a certain pension benefit created by statute constitutes a right contractual in nature, what is the extent of the right that has been created? Bakenhus answered as follows:
The problem arises in determining the extent of the contractual undertaking on the part of the state or municipal authority which has promised the pension. . . . The promise on which the employeerelies is that which is made at the time he enters employment; andthe obligation of the employer is based upon that promise.
48 Wn.2d at 700 (emphasis added). This interpretation of the pension statutes is reasonable, Bakenhus continued, because it "gives effect to the reasonable expectations of the employee and at the same time allows the legislature the freedom necessary to improve the pension system and adapt it to changing economic conditions". Id. at 701.
The right to a public pension "commence[s] . . . with the first day of employment or service, and continue[s] to vest with each day's service thereafter". Tembruell v. City ofSeattle, 64 Wn.2d 503, 506, 392 P.2d 453 (1964). Significantly, however, as clarified in Noah, such "vesting" refers to "the contractual right to a pension substantially in accord with thestatutes as they existed when the employee begins service". Noah,112 Wn.2d at 845 n. 1 (emphasis added).
In the cases noted above, the Supreme Court invalidated attempts to rescind pension benefits previously granted to public employees. Those cases are all distinguishable from the present situation, however, because none of them involved statutes containing clauses that both specifically reserve the Legislature's right to amend or repeal the benefits in question in the future (e.g., gain-sharing), and they clearly state that the Legislature is not granting any contractual right to any benefits not granted before such amendment or repeal. We find this difference to be critical, because the "contractual" theory underpinning Bakenhus (and subsequent public pension cases) stresses the importance of: (1) upholding the "reasonable expectations" of the member or beneficiary,[2]
and (2) not reneging on the promise originally made to the members when they joined the pension system. We do not read the decisions to hold that the Legislature is prohibited from initially setting clear limits on the benefits being afforded to members and beneficiaries; rather, we read them to hold that the Legislature cannot later retroactively depart from the terms set forth in the original statutes granting such benefits.
A recent Oregon case related to pension benefits concurs with this reasoning. Strunk v. Pub. Employees Ret. Bd.,338 Or. 145, 108 P.3d 1058 (2005). Although the Oregon Supreme Court has held that the pension statutes can create contractual rights for PERS beneficiaries, it has also held that the Legislature may limit the extent of such contractual rights by including clear statutory language to this effect. One of the issues raised in Strunk concerned the Oregon Legislature's 1991 repeal of the tax exemption for PERS benefits. The Oregon Supreme Court had held (in an earlier case, Hughes v. Oregon, 314 Or. 1,838 P.2d 1018 (1992)) that this repeal in effect breached PERS members' contractual rights, requiring a legislative remedy. When the Oregon Legislature failed to act, class action litigation was brought, leading to a settlement for damages covering all PERS retirees who were PERS members before the effective date of the 1991 tax repeal. The Legislature adopted the terms of the settlement and codified them in the Oregon statutes, specifically Or. Rev. Stat. §§ 238.375 to 238.380. The implementation of these terms resulted in an annual increase in employer contribution rates to PERS of approximately 1.4 percent. Significantly, however, the Oregon Legislature included the following provision in Or. Rev. Stat § 238.375(3):
No member of the system or beneficiary of a member of the system shall acquire a right, contractual or otherwise, to the increased benefits provided by [Or. Rev. Stat. §§ 238.375 — .380].
Strunk, 108 P.3d at 1079.
When the Oregon Legislature passed certain laws in 2003 lowering PERS retirement benefits, the PERS member petitioners in Strunk argued that doing so impermissibly repealed the benefits they had obtained by virtue of the settlement that had been codified into the Oregon PERS statutes. The court disagreed:
Respondents argue, we conclude correctly, that the . . . settlement agreement by its specific terms limited petitioners' rights to those set out in the 1991 legislation and that that legislation expressly disavowed the creation of any contractual rights. The wording of ORS 238.375(3) . . . could not be clearer in that respect. Nothing about the context of that wording alters what we perceive to be the legislature's manifest intent. Because petitioners have failed to demonstrate a contractual right that [the 2003 Oregon laws are] capable of breaching with respect to the . . . settlement, we reject their argument.
Id.
The Washington State Supreme Court has addressed the Legislature's power to amend contractual rights in public contracts in non-pension contexts. These cases indicate that contract rights may be made subject to future alteration by the Legislature, if the Legislature's reservation clause is clear and specific enough. In Caritas Servs., Inc. v. Dep't of Social Health Servs., 123 Wn.2d 391, 869 P.2d 28 (1994), at issue was whether amendments to the Nursing Homes Auditing and Cost Reimbursement Act of 1980 (RCW 74.46), and related regulations, unconstitutionally impaired contract rights by retroactively reducing nursing home reimbursement rates under the Medicaid program. The contract clause there provided:
All rights and obligations of the parties to this agreement shall be . . . governed by the terms of this agreement or as set forth in the laws and regulations of the State of Washington and the United States, as now existing or hereafter adopted or amended, relating to the administration of the Title XIX Medicaid program, payment for services under such program and operation of nursing homes generally[.]
Caritas, 123 Wn.2d at 404 (ellipses and emphasis in original). The Court found that this language was not specific enough to allow the Legislature to subject the existing contract to future, retroactive modification. "[O]ur case law requires such reservation clauses to be made explicitly contingent on future acts of the Legislature with retroactive effect." Id. at 406 (emphasis in original). Similarly, in Carlstrom v. State,103 Wn.2d 391, 393-95, 694 P.2d 1 (1985), the Court held that a reservation clause that made a public employment contract "subject to all present and future acts of the legislature" was not specific enough to subject the contract to retroactive modification. Accord Cont'l Illinois Nat'l Bank Trust Co. v.Washington, 696 F.2d 692, 698-99 (9th Cir. 1983).
On the other hand, the Court in Caritas added: "To forestall confusion, we note that states or agencies may put potential contractors explicitly on notice that the terms of a public contract are subject to retroactive adjustment as the whims or the budgetary necessity of the state may dictate." Caritas,123 Wn.2d at 406-07, n. 9. See also Trustees of Dartmouth Collegev. Woodward, 17 U.S. 518, 666, 4 L. Ed. 629 (1819) (Story, J., concurring). In Carlstrom, the Court emphasized that "[t]he Legislature knows how to use plain English to make existing contracts subject to future modification" (Carlstrom,103 Wn.2d at 398), thus implying that the Court would uphold and enforce such specific language in a future case. The Court has also reiterated that reservation clauses must adhere to policies of fairness, such as those underlying the public pension cases. Caritas,123 Wn.2d at 407, n. 9, citing Laurence H. Tribe, American Constitutional Law
618-19 (2d ed. 1988) ("noting that the most basic purposes of the contract clause point to the simple principle that the government must keep its word"), and citing General Motors Corp. v. Romein,503 U.S. 181, 191, 112 S.Ct. 1105, 117 L. Ed.2d 328 (1992) (retroactive legislation presents problems of unfairness where it deprives citizens of legitimate expectations).
Applying these principles, we believe that the provisions in RCW 41.31.030, 41.31A020(4), 41.31A.030(5), and 41.31A.040(5), containing "non-contractual rights clauses", are sufficient to negate any obligation of the state to provide gain-sharing benefits that have not been provided prior to any subsequent modification or repeal of the gain-sharing statutes. The reservation clauses here do not contain merely general statements that the gain-sharing statutes are "subject to all present and future acts of the legislature" (Carlstrom,103 Wn.2d at 393-95), or that they are subject to laws "now existing or hereafter adopted or amended" (Caritas, 123 Wn.2d at 404). They go much further than this, stating not only that the Legislature reserves the right to amend or repeal these sections in the future, but also stating — clearly and explicitly — that "no member or beneficiary has a contractual right to receive [a gain-sharing] distribution not granted prior to that time" (RCW 41.31.030; RCW41.31A.020(4), .030(5), .040(5)).
A retirement system member is presumed to know the law by reading the pension statute. Retired Pub. Employees Coun. v.State, 104 Wn. App. at 151-52. As the Oregon Supreme Court held in construing nearly identical language in Strunk, we do not believe the Legislature's expressed intent could be clearer in this respect. Furthermore, we do not believe that members or beneficiaries, in light of this language, can claim a "reasonable expectation" (in the words of Bakenhus) to receive a continuous and unending right to gain-sharing distributions in the future. "The promise on which the employee relies is that which is made at the time he enters employment; and the obligation of the employer is based upon that promise." Bakenhus, 48 Wn.2d at 700. The "promise" of the Legislature here included a specific — but clearly limited — right to receive gain-sharing.
We trust that the foregoing will be of assistance to you.
Sincerely,
ROB MCKENNA, Attorney General
GREGORY J. TRAUTMAN
Assistant Attorney General
:aj
:pmd
[1] The actual manner of distribution of the gain-sharing amount set out in detail in the statutes is complicated and not necessary to the discussion of the issues in this opinion.
[2] The "reasonable expectation" test is an objective test, rather than one based upon the specific expectations of individual employees. Bowles v. Dep't of Ret.Sys., 121 Wn.2d 52, 67, 847 P.2d 440 (1993). Furthermore, aretirement system member is presumed to know the law by readingthe pension statute. Retired Pub. Employees Coun. v. State,104 Wn. App. 147, 151-52, 16 P.3d 65 (2001).