**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
SUPREME COURT
STATE OF WASHINGTON
6/2/2021
BY SUSAN L. CARLSON
CLERK

# THE SUPREME COURT OF WASHINGTON

| | |
|---|---|
| GAILIN HESTER, BRETT YACKLIN, DOUG CLEVENGER and GREG ULRICH, each individually and on behalf of their respective marital communities, and on behalf of all others similarly situated, | ) ) ) ) ) |
| | ) |
| Petitioners, | ) |
| | ) |
| v. | ) |
| | ) |
| STATE OF WASHINGTON; WASHINGTON DEPARTMENT OF RETIREMENT SYSTEMS; and WASHINGTON STATE PATROL, | ) ) ) ) |
| | ) |
| Respondents. | ) |
| | ) |

**ORDER DENYING FURTHER RECONSIDERATION**

No. 98495-6

---

The Court considered the "PETITIONERS' MOTION FOR RECONSIDERATION AND/OR CLARIFICATION" and the Respondents' "ANSWER TO PETITIONER'S MOTION FOR RECONSIDERATION AND/OR CLARIFICATION". The Court entered an "ORDER AMENDING OPINION" in this case on June 1, 2021.

Now, therefore, it is hereby

ORDERED:

That further reconsideration is denied.

DATED at Olympia, Washington this 2nd day of June, 2021.

For the Court

González C.J.
CHIEF JUSTICE

FILED
SUPREME COURT
STATE OF WASHINGTON
6/1/2021
BY SUSAN L. CARLSON
CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

GAILIN HESTER, BRETT YACKLIN,
DOUG CLEVENGER and GREG ULRICH,
each individually and on behalf of their
respective marital communities, and on behalf
of all others similarly situated,

                    Petitioners,

        v.

STATE OF WASHINGTON;
WASHINGTON DEPARTMENT OF
RETIREMENT SYSTEMS; and
WASHINGTON STATE PATROL,

                    Respondents.

No. 98495-6

ORDER
AMENDING
OPINION

It is hereby ordered that the majority opinion of Johnson, J., filed March 25, 2021, in the above entitled case is amended as indicated below. All references are to the slip opinion.

On page 5, line 15, after "four" delete "retired".

On page 7, line 5, after "filed." delete "But it allowed the other three named troopers' claims to move forward because they had retired less than three years before the suit." and insert

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Hester v. State*, No. 98495-6 (order amending opinion)

"But it allowed the other three named troopers' claims to move forward because they had either not retired or retired less than three years before the suit."

DATED this ___1st___ day of June, 2021.

_____
CHIEF JUSTICE

APPROVED:

_____    _____
Johnson, J.                                        Gordon McCloud, J.

_____    _____
Madsen, J.

_____    _____
Owens, J.

_____    _____
Stephens, J.                                        Whitener, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
MARCH 25, 2021

*Gonzáles, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
MARCH 25, 2021

*Susan L. Carlson*
SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| GAILIN HESTER, BRETT YACKLIN, DOUG CLEVENGER and GREG ULRICH, each individually and on behalf of their respective marital communities, and on behalf of all others similarly situated, | ) ) ) ) ) ) | No. 98495-6 |
| Petitioners, | ) ) | |
| v. | ) ) | En Banc |
| STATE OF WASHINGTON; WASHINGTON DEPARTMENT OF RETIREMENT SYSTEMS; and WASHINGTON STATE PATROL, | ) ) ) ) ) | |
| Respondents. | ) ) | Filed: March 25, 2021 |

JOHNSON, J.—This case involves a challenge to former RCW

43.43.120(23)(a) (2001), which excluded certain overtime from the calculation of

the monthly pension benefit granted under the Washington State Patrol Retirement

System (WSPRS). Four Washington State troopers (Troopers) hired before the

*Hester v. State*, No. 98495-6

statute became effective claim that this exclusion of voluntary overtime from the calculation of their monthly pensions is an unconstitutional impairment of their contract with the State in violation of article I, section 10 of the United States Constitution and article I, section 23 of the Washington State Constitution.[1] On cross motions for summary judgment, the trial court ruled that (1) the statute of limitations was three years and accrued at retirement, (2) there remained issues of material fact regarding whether the change was offset by comparable benefits, and (3) the change was reasonable and necessary to serve a legitimate public purpose. We affirm the trial court's rulings on the statute of limitations and on comparable benefits. However, we vacate its legitimate public purpose ruling as premature given that the issue of comparable benefits remains for trial. We therefore affirm and remand for additional proceedings.

FACTS AND PROCEDURAL HISTORY

The WSPRS was created in 1947 for the benefit of commissioned Washington State troopers. Chapter 43.43 RCW. This case arises out of a legislative amendment to the WSPRS enacted in 2001. Specifically, the Troopers challenge an amendment altering what was included in their "average final salary."

---

[1] The trial court did not rule on the Troopers' motion for class certification. The Troopers are presented as a putative class for purposes of this case.

*Hester v. State*, No. 98495-6

The amendment excluded certain voluntary overtime pay from the calculation of the amount of the monthly pension they would receive.

Since its inception, chapter 43.43 RCW has provided a monthly pension for retired members of WSPRS under statutory definitions. The monthly pension is calculated by multiplying two percent of the "average final salary" by the number of years of service. RCW 43.43.260(1)-(2). The definition of "average final salary" and what is included in that computation has changed over time. The relevant definition in this case is the "average monthly salary" for a period of two years leading up to retirement, or any consecutive two-year period of service, whichever is greater. *See* RCW 43.43.120(3)(a).[2] But the statute did not originally define what was included in an employee's "salary" for the average monthly salary calculation. Without a definition, the salary simply calculated all salary earned, including all overtime worked during the relevant two-year period.

The inclusion of all overtime in computing average monthly salary generated a practice the parties refer to as "pension spiking" or "pension ballooning." Appellants' Corrected Opening Br. at 20, 31; Br. of Resp'ts at 1, 31. The practice was that a trooper knows their monthly pension will be calculated

---

[2] Engrossed Senate Bill 5143, which contains the legislative amendment at issue in this case, created two classes of retirees upon its enactment in 2001. One plan governed currently commissioned troopers and the other governed those joining on or after July 1, 2003. The salary definition also delineated between those commissioned before July 1, 2001. The Troopers and the proposed putative class were commissioned before July 1, 2003 and before July 1, 2001, so the statutory sections pertaining to troopers commissioned after those dates are not discussed.

3

based on their average monthly salary during two years of service. And with this

knowledge, troopers approaching retirement would work more overtime than

normal during those years, causing an increase in both their average final salary

and the ultimate monthly pension they receive.[3]

In 2001, the legislature enacted Engrossed Senate Bill 5143, which added a

definition of "salary" that excluded *voluntary overtime* from the calculation of

average final salary. LAWS of 2001, ch. 329, § 3(23).[4] "Voluntary overtime" was

left undefined, but it was generally interpreted as overtime that employees

volunteer for, rather than overtime that is case driven or assigned by a supervisor.

Voluntary overtime hours have mostly been earned through state contracts with

third parties for security services for special events. Under these third-party

contracts, the State is reimbursed for the salary paid, including benefits. The

exclusion of voluntary overtime from the definition of salary resulted in a decrease

---

[3] In 1999, a report by the Joint Legislative Audit and Review Committee found that "[t]he average WSPRS retiree had an estimated regular salary of $46,977 and an average final compensation of $57,633, which was 23 percent above the final two-year regular salary. An estimated 61 percent of that 23 percent was attributable to overtime earnings in the last two years of employment." Clerk's Papers at 389.

[4] The legislature redefined "salary" to include voluntary overtime up to 70 hours per year after July 1, 2017. LAWS of 2017, ch. 181, § 1(21); RCW 43.43.120(21)(a) ("On or after July 1, 2017, salary shall exclude overtime earnings in excess of seventy hours per year in total related to either RCW 47.46.040 or any voluntary overtime."). Although the Troopers argue that they are challenging the 2017 amended definition in addition to the 2001 definition, this case only addresses the 2001 amendments because that is the only legislative amendment challenged in the complaint.

4

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

of the possible monthly pension benefit retiring employees will receive by lowering the compensation included in the calculation of their average final salary.

In addition, the legislature made two other changes impacting the Troopers' pensions in 2001 that the parties discuss as relevant to the unconstitutional impairment claim. First, the legislature changed the amount employees must contribute from their salaries to the pension fund throughout their career from seven percent of their salaries to the greater of two percent or the employer rate. LAWS of 2001, ch. 329, § 11. Second, it changed the cost of living adjustment (COLA), which increases the future monthly pension retired employees receive to account for inflation. The COLA changed from a fixed two percent increase to a compounding COLA percentage based on the consumer price index with a maximum increase of three percent, where additional percentages above three percent are banked to be used if the following years' increase falls below three percent. LAWS of 2001, ch. 329, § 4 (codified at RCW 43.43.260(5)).

On November 29, 2017, four retired troopers hired before the 2001 statutory amendment sued the State of Washington, the Washington State Department of Retirement Systems (DRS), and the Washington State Patrol. The Troopers argued that the legislative amendment improperly excluded overtime they had worked during the final two years of service prior to retirement from their monthly pension

*Hester v. State*, No. 98495-6

calculation.[5] They raised four claims,[6] but pertinent to this appeal, the Troopers argued that the overtime exclusion was an unconstitutional impairment of their employment contract pursuant to article I, section 23 of the Washington Constitution and article I, section 10 of the United States Constitution. The Troopers sought class certification consisting of a class of similarly situated troopers. Both parties moved for summary judgment prior to the trial court ruling on class certification.

The State moved for dismissal and summary judgment. It argued that the claims were time barred by a three-year statute of limitations for unwritten contracts and that the statute of limitations accrued at the time the legislative amendment was enacted in 2001. The Troopers cross moved for summary judgment on the statute of limitations, contending that a six-year period for written contracts applied and that the statute of limitations accrued on retirement. The Troopers also argued that a new limitations period begins every time an impaired monthly benefit is paid (the continual accrual rule).

The trial court granted in part and denied in part each parties' motion for summary judgment. It concluded that a three-year statute of limitations for

---

[5] Each of the named troopers worked voluntary overtime hours, and some worked substantial amounts of this type of overtime. For example, Greg Ulrich claimed he worked 300 voluntary overtime hours during the two-year period used to calculate his average final salary.

[6] The Troopers also claimed that the overtime exclusion was a breach of contract and a violation of the wage rebate act (ch. 49.52 RCW).

*Hester v. State*, No. 98495-6

unwritten contracts applied and that the limitations period accrued at retirement.[7] The court also concluded that the continual accrual rule did not apply to the Troopers' claims. As a result, the court dismissed the claims of one of the named troopers, Brett Yacklin, because he had retired more than three years before the suit was filed. But it allowed the other three named troopers' claims to move forward because they had retired less than three years before the suit.

Both parties also moved for summary judgment on the merits. The Troopers argued that their contract with the State was impaired by the overtime exclusion because that exclusion lowered the average final salary used to calculate their monthly pension. They also contended that the overtime exclusion was not reasonable and necessary to serve a legitimate public purpose and that a lowered contribution rate and increased COLA percentage were not comparable benefits. The State countered in its motion for summary judgment that the legislature added a definition of salary for the purpose of limiting pension spiking by taking away troopers' ability and incentive to control an increase in their pensions through working voluntary overtime. The State argued that the prevention of pension spiking was a legitimate public purpose necessary to protect the retirement fund's integrity, and that the lowered contribution rate and increased COLA adjustment

---

[7] The court also concluded that laches did not bar any of the claims made within the applicable statute of limitations. Neither party challenges that ruling.

*Hester v. State*, No. 98495-6

were comparable benefits. The trial court granted the State's motion for summary judgment in part, concluding that the State had shown that the overtime exclusion was reasonable and necessary to serve a legitimate public purpose. But it also denied summary judgment to both parties by deciding that there were issues of material fact as to whether the amendments provided comparable benefits.

The Troopers moved the superior court to certify the summary judgment order for an immediate discretionary review. On February 4, 2019, the superior court granted the motion, certified the order for discretionary review, and stayed further proceedings pending a decision on any motion for discretionary review. Troopers were then granted discretionary review in Division One of the Court of Appeals, and we granted a subsequent motion to transfer review to this court.

ANALYSIS

Standard of Review

We review summary judgment de novo. *Wash. Educ. Ass'n v. Dep't of Ret. Sys., 181 Wn.2d 233, 241, 332 P.3d 439 (2014) (WEA).* The trial court order presents only legal issues, which involve application of the constitutionality of the statutory amendment at issue here. Constitutional issues are questions of law, which we review de novo. *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 403, 377 P.3d 199 (2016).

*Hester v. State*, No. 98495-6

Statute of Limitations

Both parties dispute the trial court's ruling that pension impairment claims have a statute of limitations that accrues upon retirement and lasts for a period of three years. We have previously addressed and resolved this issue as applied in pension impairment claims and have held that these types of claims are subject to a three-year statute of limitations period, which accrues upon retirement. *Noah v. State*, 112 Wn.2d 841, 843, 846, 774 P.2d 516 (1989). *Noah* involved a similar dispute claiming a breach of a pension contract based on the legislature's exclusion of unused vacation pay in the computation of employees' "average final salary." In that case, since the claims all involved plaintiffs who had retired more than three years prior to the lawsuit, the trial court had dismissed the claims by applying a three-year statute of limitations, which we affirmed. We held that the right the complainant was seeking to establish—using accrued vacation pay in calculating retirement benefits—was statutorily based. Therefore, even though we recognized that pension rights cases have some characteristics of a contract and are characterized as contractual in nature, the public retirement statute in and of itself did not constitute a complete contract in writing. *Noah*, 112 Wn.2d at 844-46.[8]

---

[8] In analyzing the appropriate limitations period for pension impairment claims, *Noah* relied on the statute of limitation periods for contracts claims, which have a period that depends on whether the contract is in writing. RCW 4.16.080(3) (three-year statute of limitations for "an action upon a contract or liability, express or implied, which is not in writing"), .040(1) (six-year statute of limitations for "[a]n action upon a contract in writing").

9

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Other cases have affirmed this rule. *WEA*, 181 Wn.2d at 248 ("It is well settled that retirees are subject to a three-year statute of limitations for actions alleging a breach of pension contracts."); *see also Bowles v. Dep't of Ret. Sys.,* 121 Wn.2d 52, 78-79, 847 P.2d 440 (1993). Therefore, the trial court applied these holdings in ruling that a three-year statute of limitations period applied accruing upon retirement to the Troopers' claims.

The parties argue that the trial court's decision to follow the settled law on the statute of limitations is incorrect, but none of their arguments are persuasive and they would require overruling these prior cases. The Troopers argue the trial court erred by deciding that the continual accrual theory did not apply to these claims. Appellants' Corrected Opening Br. at 40. Our cases have not applied the continual accrual theory to pension impairment claims, but the Troopers primarily point to California case law to support their argument. *Abbott v. City of Los Angeles*, 50 Cal. 2d 438, 462, 326 P.2d 484 (1958); Appellants' Corrected Opening Br. at 41-43. The reasoning underlying this theory is that the State impairs and breaches the employees' contract rights each time it pays them less than they were owed. The Troopers argue that this theory is further supported by the law applied to installment contracts, where each payment is a new obligation and thus breach of that payment begins a new limitations period. Appellants' Corrected Opening Br. at 43.

Applying this theory would cut against the purpose of a statute of limitations. Retirees could bring a lawsuit challenging the constitutionality of a future amendment to the pension system as long as they were receiving a monthly payment. Although we found California cases persuasive in our seminal pension case, *Bakenhus v. City of Seattle*, 48 Wn.2d 695, 296 P.2d 536 (1956), the analogy to installment contracts is unpersuasive. While *Bakenhus* relied on a contracts theory to analyze pension impairment claims, we also recognized that the use of a contracts analysis in pension cases may "not be flawless in a purely legalistic sense." *Bakenhus*, 48 Wn.2d at 701. Moreover, applying the continual accrual rule would be contrary to our previous holdings that pension contract claims accrue at retirement alone and are subject to a three-year statute of limitations, as we held in *Noah*.

Second, the Troopers claim that a six-year statute of limitations applies to their claims because *the statute* is a contract in writing. RCW 4.16.040(1). But no support exists for this argument. Again, in *Noah,* we reasoned that in some cases a statute may be treated as a contract in writing when there is legislative intent to create contract rights and where the statute is a complete written contract. We concluded that the statute governing "Plan 1" of the Public Employees' Retirement System (PERS 1) was not one of them and that the claim was subject to a three-year statute of limitations period. We reasoned that the statute governing PERS 1

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Hester v. State*, No. 98495-6

was similar to an unwritten contract because the inclusion of unused vacation pay in the average final salary was an administrative interpretation not contained in the statute and the statute did not show legislative intent to create a complete contract. *Noah*, 112 Wn.2d at 845-46.

Here, the Troopers attempt to distinguish *Noah* by arguing that the WSPRS, unlike the PERS 1 statute at issue in *Noah*, has all the elements of a written contract. Appellants' Corrected Opening Br. at 45-47. But this case is similar to *Noah* in that the inclusion of overtime was not expressly in the pension statute. The Troopers have not presented any statutory section supporting a complete contract, and we find none. Nor does any legislative intent show that the statute was intended to be a complete contract in writing.

The State also complains that the trial court incorrectly decided that the statute of limitations period accrues at retirement. Because of the length of time between the statutory amendment and the suit, the State urges us to conclude that the statute of limitations accrues at the legislative amendment, 2001 in this case. Br. of Resp'ts at 16-26. If we agreed with the State, all of the Troopers' claims would be barred given that the suit was initiated 17 years after the 2001 amendment.

But we have consistently recognized that pension impairment claims accrue at the date of retirement rather than at enactment of legislation. Starting with

12

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Bakenhus*, we recognized that no injury occurs until retirement. 48 Wn.2d at 696-97 (while the statute of limitations was not at issue in *Bakenhus*, the claim was brought after retirement and 13 years after a legislative amendment). Similarly in *WEA*, we considered a pension impairment claim brought by a class based on an amendment and repeal to COLA adjustments for PERS 1 and the Teachers' Retirement System Plan 1. The legislative amendment was enacted 16 years before the lawsuit was initiated, and while we concluded that the amendment was not an unconstitutional impairment, we first noted that certain members of the class would have been allowed to move forward based on an accrual date at retirement and a statute of limitations period of three years. *WEA*, 181 Wn.2d at 248-251. The State counters that claims accrue at retirement only in cases involving a challenge to a DRS interpretation and that a legislative amendment should establish the time the claim exists. Br. of Resp'ts at 20-23. But, as noted, we have previously considered claims occurring more than three years after the date of a legislative amendment. The State further argues that the discovery rule as applied in contracts cases supports its claim because retirees have notice of the impact of a legislative amendment before retirement. Br. of Resp'ts at 23-26. But, as occurred in this case, no breach occurs until retirement because the statutory computation is not applied before retirement.

The State does not provide any persuasive reasons to abandon our previous cases. We affirm the trial court's ruling on the statute of limitations, which applied the settled law that these claims accrue at retirement and are subject to a three-year statute of limitations. We affirm the trial court on these rulings.

## Comparable Benefits and Legitimate Public Purpose

The Troopers next argue that they are entitled to summary judgment on the merits regarding their underlying claim that the State unconstitutionally impaired their pension contracts in violation of article I, section 23 of the Washington Constitution and article I, section 10 of the United States Constitution.[9] In this type of claim, we have held the state and federal contracts provisions are interpreted in the same manner. *WEA*, 181 Wn.2d at 242.

We considered the extent to which pension contracts may create enforceable contractual rights in *Bakenhus,* 48 Wn.2d at 698-701. *Bakenhus* considered whether a city's amendment that decreased the amount of pension benefits received by a retired police officer was an impairment of the police officer's contract with the city. We concluded that pensions are similar to "deferred compensation for services rendered" and thus the police officer had a vested

---

[9] Article I, section 23 of the Washington Constitution provides that "[n]o . . . law impairing the obligations of contracts shall ever be passed," and article I, section 10 of the United States Constitution similarly provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

contractual right to the previous method of calculating his monthly pension. *Bakenhus,* 48 Wn.2d at 698. We found persuasive California cases holding that any modification of pension benefits must be for the purpose of ensuring the continued flexibility and integrity of the pension system, otherwise they are invalid. We also noted that to be valid, any impairment must create and provide "'comparable new advantages.'" *Bakenhus,* 48 Wn.2d at 702 (quoting *Allen v. City of Long Beach*, 45 Cal. 2d 128, 131, 287 P.2d 765 (1955)). We found that because the decrease in pension benefits was not reasonable or necessary to maintain the flexibility or integrity of the pension system and because it provided no comparable benefit, the city had impaired the officer's contract and the statutory revisions could not be constitutionally applied in those circumstances.

While *Bakenhus* is our seminal case analyzing pension impairment claims, we have since clarified that its principles operate within a broader context for claims of impairment of other public contracts. As an analytical tool, we ask, "(1) whether a contractual relationship exists, (2) whether the legislation substantially impairs the contractual relationship, and (3) if there is substantial impairment, whether the impairment is reasonable and necessary to serve a legitimate public purpose." *WEA*, 181 Wn.2d at 243. But the requirements of flexibility, integrity, and comparable benefits recognized in *Bakenhus* strongly inform this analysis in pension impairment cases, and, in particular, the application of the substantial

15

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

impairment prong. More specifically, for an impairment to be unconstitutional, no comparable benefits must exist. This is based on a theory of mutual assent; assent to a legislative modification negatively impacting pension benefits is presumed if that legislation also provides a comparable or greater benefit. Thus, there is "no contract impairment so long as those disadvantageous modifications were accompanied by comparable new advantages." *WEA*, 181 Wn.2d at 249.

Here, the trial court's summary judgment order was twofold: (1) there remained issues of material fact about whether the amendment provided benefits comparable to the exclusion of certain overtime pay and (2) there were no issues of material fact that the overtime exclusion was reasonable and necessary to serve a legitimate public purpose.

The parties do not dispute that a limited contract right to the inclusion of voluntary overtime had vested for the first prong of the test. Under the second prong, as previously mentioned, substantial impairment is measured by the extent to which the legislation provides comparable benefits.

The trial court does not explicitly mention the substantial impairment prong in its ruling. Instead, the trial court's order denied summary judgment on whether the amendment provided comparable benefits, concluding that genuine issues of material fact existed based on the expert calculations filed. The parties provided detailed and conflicting expert declarations regarding whether the amendment

16

*Hester v. State*, No. 98495-6

provided benefits comparable to the inclusion of overtime in the calculation of average final salary. The experts disagree on the method of calculating these alleged benefits over the length of retirement and the assumptions made in those calculations. We agree with the trial court that these are factual disputes requiring resolution at trial. We therefore affirm that part of the trial court's ruling and reiterate that comparable benefits is a part of the substantial impairment analysis, which remains an issue for trial.

As to the third prong, we vacate the trial court's ruling that the overtime exclusion was reasonable and necessary to serve the legitimate public purpose of preventing pension spiking. We have concluded since *Bakenhus* that pension benefits might be modified where the purpose of maintaining the flexibility and integrity of the pension system is threatened, and we have analyzed this issue within the substantial impairment prong. *Lenander*, 186 Wn.2d at 415. Even when a modification is justified by a legitimate purpose, our cases have concluded that "the modifications *must* be accompanied by corresponding benefits." *Wash. Fed'n of State Emps. v. State*, 98 Wn.2d 677, 689, 658 P.2d 634 (1983) (emphasis added).

The Troopers argue that the exclusion of overtime could not have advanced a legitimate public purpose because the investments that fund their pensions were overfunded at the time of the amendment and therefore the financial integrity of the fund was not threatened. Appellants' Corrected Opening Br. at 30. But because

17

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

legitimate public purpose is tied to the issues of substantial impairment and comparable benefits, and because we affirm the trial court's ruling that genuine issues of material fact remain regarding whether the benefits provided by the amendment were equal to or more advantageous than the inclusion of overtime, it was premature to rule on the issue of legitimate public purpose where the question of comparable benefits remains an issue for trial. Therefore, we vacate the trial court's ruling on that issue.

## CONCLUSION

We affirm the trial court's ruling that the statute of limitations accrues on retirement and lasts for three years. We also affirm its ruling that there are genuine issues of material fact as to whether the amendment provided benefits equal to or more advantageous than the overtime exclusion. But we vacate the trial court's ruling that the overtime exclusion was reasonable and necessary to serve a legitimate public purpose. A decision on that third prong of the public contracts analysis was premature without knowing the existence and financial extent of the impairment and the value of new financial benefits created. We therefore remand for trial.

*Hester v. State*, No. 98495-6

Johnson, J.

WE CONCUR:

Gordon McCloud, J.

Madsen, J.

Owens, J.

Stephens, J.

Whitener, J.

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Hester v. State*, No. 98495-6 (González, C.J., concurring in part and dissenting in part)

No. 98495-6

GONZÁLEZ, C.J. (concurring in part and dissenting in part) — I concur with the majority that the statute of limitations for the claims brought in this case is three years and accrues at the time of retirement. I also agree that there are material questions of fact concerning comparable benefits that preclude summary judgment on the issue. However, I disagree with the majority's analytical approach to determine whether there was a legitimate public purpose to the statutory change to this pension system. The majority is wrong about how the legitimate public purpose factor fits into our overall framework for analyzing public contract impairment in the context of public pension plans.

The *Bakenhus* decision remains the "driving force" when analyzing the constitutionality of changes to a public pension system. *Wash. Educ. Ass'n v. Dep't of Ret. Sys.*, 181 Wn.2d 212, 223, 332 P.3d 428 (2014) (*WEA* II) (citing *Bakenhus v. City of Seattle*, 48 Wn.2d 695, 296 P.2d 536 (1956)). Relevant to this case, *Bakenhus* requires that any change must be made for a legitimate purpose and that any disadvantageous changes must be offset by comparable new advantages.

1

*Hester v. State*, No. 98495-6 (González, C.J., concurring in part and dissenting in part)

*Bakenhus*, 48 Wn.2d at 701-03 (citing *Allen v. City of Long Beach*, 45 Cal. 2d 128, 130, 287 P.2d 765 (1955)). These are the two main controverted principles that the trial court considered on cross motions for summary judgment, and the parties agree that both principles must be satisfied for the State to prevail.

We consider these principles within the broader framework for analyzing public contract impairment in general. *Wash. Educ. Ass'n v. Dep't of Ret. Sys.*, 181 Wn.2d 233, 244, 332 P.3d 439 (2014) (*WEA* I). Under the *Carlstrom* test we ask, "(1) Does a contractual relationship exist, (2) does the legislation substantially impair the contractual relationship, and (3) if there is substantial impairment, is the impairment reasonable and necessary to serve a legitimate public purpose?" *Lenander v. Dep't of Ret. Sys.*, 186 Wn.2d 393, 414, 377 P.3d 199 (2016) (citing *WEA* I, 181 Wn.2d at 243); *Carlstrom v. State*, 103 Wn.2d 391, 394-96, 694 P.2d 1 (1985). Specifically, the *Bakenhus* principles inform the analysis of whether there is substantial impairment under prong two. *Lenander*, 186 Wn.2d at 414-15.

*Bakenhus* established two independent principles. First, the court recognized the necessity of allowing the legislature to make reasonable changes to pension plans for the purpose of keeping the pension system flexible and maintaining its integrity. *Bakenhus*, 48 Wn.2d at 701 (quoting *Allen*, 45 Cal. 2d at 131). To be sustained as "reasonable," the changes "'must bear some material

2

relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages.'" *Id.* at 702 (quoting *Allen*, 45 Cal. 2d at 131).

These two independent inquiries of legitimate purpose and comparable new benefits are the issues before us. As to the first, the trial court held "that there was sufficient and necessary, reasonable, legitimate purpose for the amendment." 2 Verbatim Tr. from Recorded Proceedings (VRP) at 61. To determine whether the changes to the pension system were made for the legitimate purpose of ensuring flexibility and integrity of the pension system, we ask if the changes "'bear some material relation to the theory of a pension system and its successful operation.'" *Bakenhus*, 48 Wn.2d at 702 (quoting *Allen*, 45 Cal. 2d at 131). In this case, the answer is yes, and thus, unlike the majority, I would affirm on that point.

Since its inception in 1947, the Washington State Patrol Retirement System (WSPRS) calculated an employee's monthly pension amount as a percentage of their average final salary multiplied by the number of years of service. LAWS of 1947, ch. 250, § 15. The term "salary" was not defined in the original statute, and for many years in practice all overtime, including voluntary overtime, was included in the calculation. In 2001, the legislature defined "salary" in a way that excluded

3

*Hester v. State*, No. 98495-6 (González, C.J., concurring in part and dissenting in part)

voluntary overtime. LAWS OF 2001, ch. 329, § 3(23) (currently codified as RCW 43.43.120(21)(a)). This was an appropriate and legitimate use of legislative power. Fundamental to the operation of a pension system is the calculation of monthly benefits based on a predictable definition of what is included. A performance audit by the Joint Legislative Audit and Review Committee found that many employees were working more voluntary overtime than usual in their last two years of service in order to increase the amount of their average final salary, thus increasing their monthly pension amounts. This process, known as "pension spiking" frustrates the system's ability to predict future obligations. Furthermore, the practice allows some employees to increase their potential pension more than others. Availability of voluntary overtime is not equal across the state and even where it was available it was sometimes assigned in violation of Washington State Patrol policy. And the practice has created public outrage in other states, creating a real risk of undermining public confidence. The effects of pension spiking on predictability, equity, and public confidence all support the conclusion that the changes "'bear some material relation to the theory of a pension system and its successful operation.'" *Bakenhus*, 48 Wn.2d at 702 (quoting *Allen*, 45 Cal. 2d at 131). Thus I would affirm the trial court's ruling on this issue.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Hester v. State*, No. 98495-6 (González, C.J., concurring in part and dissenting in part)

Having established that the changes were made for a legitimate purpose, the court must also decide whether disadvantageous changes were offset by comparable new advantages. I agree with the majority that material issues of fact remain. Majority at 16-17. Both sides presented competent evidence that suggested the new benefits did, or did not, offset any legitimate expectation held by the officers. Thus, I would affirm the trial court on this issue as well.

The majority seems to agree that both *Bakenhus* factors are properly considered under prong two of the *Carlstrom* test. Majority at 17 ("We have concluded since *Bakenhus* that pension benefits might be modified where the purpose of maintaining the flexibility and integrity of the pension system is threatened, and we have analyzed this issue within the substantial impairment prong." (citing *Lenander*, 186 Wn.2d at 415)). The majority concludes it was "premature to rule on the issue of legitimate public purpose" when the issue of comparable benefits has yet to be decided. *Id.* at 18. But this confuses the test for legitimate purpose from *Bakenhus* with the justification prong of the *Carlstrom* test.

Properly understood, the third prong of the *Carlstrom* analysis is a balancing test used when the State substantially impairs a contract. It asks whether the substantial impairment was "'nevertheless justified as a reasonable and necessary

5

*Hester v. State*, No. 98495-6 (González, C.J., concurring in part and dissenting in part)

exercise of the State's sovereign power'" and attempts to "strike[] a balance between the inherent police power of the state and the legitimate expectations of those who enter into contracts with the state." *Tyrpak v. Daniels*, 124 Wn.2d 146, 156, 874 P.2d 1374 (1994) (quoting *Cont'l Ill. Nat'l Bank & Tr. Co. v. Washington*, 696 F.2d 692, 697 (9th Cir. 1983), and citing *U.S. Tr. Co. v. New Jersey*, 431 U.S. 1, 23-24, 97 S. Ct. 1505, 52 L. Ed. 2d 92 (1977)). Thus, where *Bakenhus* asks whether changes to a pension system were motivated by a legitimate purpose, the third prong of the *Carlstrom* test asks whether disadvantageous changes were reasonable and necessary to effectuate that purpose. We have never reached this stage of the *Carlstrom* analysis in a public pension case.

In the case before us, the parties agree that the State must show that the changes were both made for a legitimate purpose and accompanied by comparable new advantages. These two independent factors from *Bakenhus* are properly considered under the second prong of *Carlstrom* to determine if the contractual relationship was substantially impaired. But whether there was a legitimate purpose is a separate question in the public pension analysis. It can and should be reached independently of the question of comparable new advantages. The State

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Hester v. State*, No. 98495-6 (González, C.J., concurring in part and dissenting in part)

has met its burden of establishing that the changes were motivated by a legitimate purpose, thus I would affirm the trial court on that issue.[1]

There may be a time when we are presented with a case where the State makes changes to a pension system that are not offset by comparable new advantages but argues that the changes were nevertheless reasonable and necessary to effectuate the legitimate purpose that motivated the changes in the first place. However, this is not that case.[2] I would wait until the issue is properly before the court before speculating on the answer.[3]

With these observations I concur in part and dissent in part.

---

[1] The majority notes the troopers' argument that the pension plan was overfunded at the time of the changes and therefore "the financial integrity of the fund was not threatened." Majority at 17 (citing Appellants' Corrected Opening Br. at 30). While this argument may be relevant under prong three of the *Carlstrom* analysis, it is of no matter here. Under the threshold legitimate purpose analysis discussed above, the State need show only that the changes "'bear some material relation to the theory of a pension system and its successful operation.'" *Bakenhus*, 48 Wn.2d at 701 (quoting *Allen*, 45 Cal. 2d at 131). The State has made that showing in this case.

[2] "The State is not asking this Court to . . . rule that the Legislature did not need to provide comparable advantages to offset the voluntary overtime exclusion." Br. of Resp'ts at 36.

[3] I note that in a similar case, the California Supreme Court held that a change without comparable advantages could be sustained if providing comparable advantages would undermine the legitimate purpose that motivated the change. *Alameda County Deputy Sheriff's Ass'n v. Alameda County Emps.' Ret. Ass'n*, 9 Cal. 5th 1032, 470 P.3d 85, 266 Cal. Rptr. 3d 381 (2020). This is not properly before us.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Hester v. State*, No. 98495-6 (González, C.J., concurring in part and dissenting in part)

González, C.J.

Yu, J.

Montoya-Lewis, J.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

8